GEORGE A. ROSS *et al. v.* WILLIAM M. FOWLER.

1. ATTACHMENT: TRAVERSE: PLEADING. — A traverse of the grounds for which an attachment is sued out should contain a simple denial of the causes for the attachment as stated in the affidavit.

2. SAME: SAME: SAME: NOTICE OF SPECIAL MATTER DOES NOT AFFECT TRAVERSE. — A plea properly traversing the causes for which an attachment is sued out, is not demurrable because of objections to the notice of special matter appended to it.

ERROR to the Circuit Court of Madison county.    Hon. J. A. P. Campbell, judge.

Fowler sued out an attachment against Ross on the ground that he was a non-resident of the State.  Ross appeared, and by plea under oath denied that he was a non-resident at the time of suing out the attachment.  Notice of special matter is filed with the plea, and contains a circumstantial account of the reasons that induced Ross to move during the war to Texas, and that he contemplated a return to the State of Mississippi as soon as the war was over.  A demurrer to the plea sustained, and leave given to answer over.  An amended plea was filed, which sets up in substance the same facts contained in the notice filed with the first plea.  Demurrer to second plea sustained; leave given to answer over, which was declined, and judgment *nil dicit* against Ross.

The errors assigned relate to the action of the court below in sustaining the demurrer to the first and second pleas.

*Jno. Handy,* for plaintiff in error, in *this* court, but not counsel in the court below, contended —

1. The first plea is simply a general traverse of the attachment; all that follows the first sentence in this plea is surplusage; and whatever may have been the intention of the learned

counsel who drafted it in the court below, this is its legal effect, and no more.    It is not a special plea, but only a general traverse, and being so, the demurrer thereto could not properly have been sustained by the court.

2.  But, viewing both the first and second pleas as special in their character, they substantially present the same defence, *i.e.*, that, at the time of suing out the attachment, Ross had his domicil in this State, although temporarily absent in Texas, where he had gone as a refugee during the war.    He is proceeded against as a *non-resident*, and not as a person who had removed himself or his property out of the State.    Residence is either *legal* or *actual* (Vattel, 92); the former being synonymous with domicil, while the latter is simply commorancy or temporarily abiding in a place, for a definite or indefinite period. *Crawford* v. *Wilson*, 4 Barb. Rep. 504; *Stratton* v. *Bingham*, 2 Sneed Rep. 420.    Now we affirm that the term non-resident, as used in our attachment law, means *legal* non-residence, and does not include persons merely *incolæ*, or sojourners in another State.    Domicil and residence are convertible terms.    The statute *classifies* and presents seven distinct states of fact upon either of which this writ may be sued out.    The persons embraced in the first clause are foreign corporations and non-residents — those over whom the State, by her ordinary process, never had any power; these are the subjects of *foreign* attachment, while all others are the subjects of *domestic* attachment. Immediately following this first clause of the law is one which provides for the issuance of this writ if the defendant " has removed or is about to remove himself or his property out of the State."    If persons domiciled in Mississippi, but temporarily sojourning out of the State, are included in the term non-resident, as used in the first clause of the law, then so much of this second clause as provides for attachment against one who has removed himself out of the State, is entirely superfluous. Can such a construction be given (and that to a strictly *defining* statute, made to set forth with concinnity and certainty the several *different* grounds of attachment) without a violation of all rules of legal hermeneutics?    We must take words accord-

ing to their connection, and "the true reason of the law." Fourth rule of Lord Coke, and Lieber's Legal Hermeneutics ; *McIntyre* v. *Ingraham*, 35 Miss. Rep. 52. "The words in different parts of the statute *must be referred to their appropriate connection*, giving to each in its place its proper force, *redendo singula singulis*, and, *if possible*, rendering none of them useless or superfluous." Our construction of this act conforms to, while the opposite one violates, these rules. In *Quinby* v. *Duncan*, 4 Harrington's Rep. 38, the court says the terms citizen and inhabitant ordinarily mean the same thing, " yet by the use of the two terms we are to suppose they meant different things."

The legislature used the word resident *in its accepted legal sense in this State*. This must be presumed. Now the Act of 1822 gave the remedy by attachment to "resident" creditors only, and this court confined the right to persons domiciliated here. 1 S. & M. 663. So in the State constitution the right of suffrage is given to persons *resident* for a certain period in the State, and none but a citizen or domiciliated person has ever had the right to vote ; this being the accepted meaning of the word resident as used in the constitution, art. 3, § 1. So in art. 7, § 11 the terms citizenship and residence are interchangeably used.

The cases in other States which sustain this view are very strong. In *Fitzgerald's Case*, 2 Caine's Rep. 317, the statute of New York provided for attachment against absent, absconding, or concealed debtors ; it was held that he was not liable to the attachment issued against him as an *absconding* debtor, but, being temporarily absent, he must be proceeded against as an *absent* debtor. So in *Story* v. *Smith*, 1 Hump. Rep. 420, the term " non-resident," in the first section of the statute of Tennessee on attachments, was confined, in its meaning, to the sense of *legal residence* or domicil, and the reason assigned is that the third section of the same act provided a remedy against absent or absconding debtors ; and as the facts showed that Story was in fact domiciliated in Tennessee, the attachment which issued against him as a non-resident could not be maintained.

To the same effect is the case of *Stratton* v. *Bingham*, 2 Sneed. Rep. 420, before referred to; and the case of *Brundred* v. *Del Hoyo*, Spencer's Rep. 328.

The cases referred to by adverse counsel are inapplicable. They are all based on *Thompson's Case*, 1 Wend. Rep. 45; but it is evident from all these cases, that the court, in making the term non-resident to include actual as well as legal non-residents, proceeded upon the ground that it was the object of that statute to give a remedy in all cases where the debtor cannot be served with process; and as *there was no word* in that act other than non-resident that could possibly give the remedy against persons only temporarily absent or sojourning out of the State, the broad construction was given, and we think rightly, to that act. Yet this case is reviewed, and practically disregarded, by the Supreme Court of New York, in *Hulbert* v. *Seely*, 11 Prac. Rep. 507, in which it was held that a person who had lived fourteen months in Wisconsin, and had established himself in business there, was not a non-resident within the meaning of the statute of New York, as he had *animum revertendi*.

2. The counsel for the appellant then proceeded to argue at length, that the facts stated in the pleadings show that Ross's domicil was in Mississippi, when the writ in this case was impetrated, and citing among other cases *Hairston* v. *Hairston*, 27 Miss. Rep. 716; *Still* v. *Corporation of Woodville*, 38 ib. 646 - *State* v. *Hallett*, 8 Ala. 169; *United States* v. *Penelope*, 2 Peters' C. C. Rep. 438; 1 Metcalf, 250. He further argued that in cases of political refugees such as Ross, the doctrine of the continuance of the original domicil is carried to its extreme length both in England and America; citing *De Boneval* v. *De Boneval*, 1 Curteis (Eng.) Rep. 856; and *White* v. *Brown*, 2 Wallace Jr. Rep. 217.

The issue presented by the affidavit and pleas is one of residence or non-residence. If plaintiff had replied setting up a simple *removal* from the State, it would have been a departure in pleading, and to have admitted *proof* of a simple removal would have constituted a variance between pleadings and proof wholly inadmissible; and as the facts pleaded show that Ross

was not a non-resident, the demurrer should have been over-ruled.

*A. P. Hill*, for the defendant in error, filed an elaborate brief, in which he contended —

1. That the statute allows a *general traverse only*, and does not authorize a special plea; that the plaintiff, if he had chosen, might have disregarded the special pleas, and asked for judgment (*Barrington* v. *Miss. C. R. R.*, 32 Miss. Rep. 340); plaintiff chose to demur, and he insisted that the demurrers were properly sustained for that reason, if for no other.

2. That the facts alleged in the pleas show that Ross was a non-resident when the attachment issued. This is not a question of succession of property in case of intestacy, nor of the probate of a will in one place or another, nor of the right to vote, nor of a pauper's settlement — all of which depend on the *domicil* of the party; but residence, in view of the attachment laws, is an entirely different thing from domicil: they are not convertible terms. Defendant may have had his domicil in Mississippi and his residence in Texas, and the facts set forth in the pleas show that his residence was in Texas. The law must be construed with reference to its subject-matter. There are in it two divisions — one embracing *domestic*, the other *foreign* attachments; the whole is but a statute of process, designed to give a remedy which the ordinary process of the law would not reach. The pleas allege that Ross took his family with him, so that there was no person with whom the process might be left. It also alleges that he intended to return, not at any definite period, but "as soon as the condition of the country and safety of himself, family, and property would admit of it; and that he *still remained* of that intent and purpose" on 18th day of October, 1866, when he filed his pleas.

The act is remedial, and must be construed so as to advance the remedy. The pleas allege an intention of absence for an indefinite time: "until the year after the close of the war;" and of return as soon as safety to his family, etc., would admit of. It does not appear that he ever has returned, and a deter-

mination to return at the vague and uncertain period of the close of the war fixes on him the character of a non-resident; yea, more, it even works a change of domicil. 8 Cranch. Rep. 253. While a person remains in a State he must be considered an "*inhabitant;*" and therefore, while a person was within the State, though intending to emigrate and on his journey for that purpose, it was held he was not subject to foreign attachment. Sergeant on Attachment, 61. The terms inhabitant and resident are synonymous — and the term non-resident embraces as well those who once resided in a State, as those who never did. *Taylor* v. *Knox*, 1 Dallas, 170; *Hoggart* v. *Morgan*, 1 Selden, 422.

In the matter of *Alexander Thompson*, 1 Wend. Rep. 43, the case arose under the statute of New York giving this remedy against a " debtor who resides out of the State," and the court says " the act was intended to give a remedy to creditors whose debtors cannot be served with process; " and again they say this "reason is equally applicable whether the debtor be absent temporarily or permanently. A debtor, by residing abroad, without declaring an intention to remain, might prevent his creditors from ever collecting their debts." See also the matter of *Wrigley*, 4 Wend. Rep. 602.

It may be said that the facts alleged in the pleas constitute only a *removal of himself* and property, and so fall under another clause of the act. If that were so, it does not show it is excluded from the operation of the first. But if the allegation had been removal of person and property, the answer and objection would have been just the same as are now set up. Cases may arise where a party has removed himself or property out of the State, yet without any such design of continued absence as to impress on him the character of a non-resident; and the second clause affords no ground to argue that the term non-resident is to be taken differently from its plain, natural, and even technical meaning.

Counsel for defendant in error then proceeded to compare § 6 of Hutchinson's Code, with the eleventh, twelfth, and fifteenth sections of the same Code, and to argue that, under the

old law, the term non-resident meant simply an inhabitant of another country or State.

He then proceeded to argue at length that Ross's remaining in Texas was for such an *indefinite* period of time as to constitute him a resident of that State, in the sense both of an actual and legal residence there, and cited *Frost* v. *Brisbin*, 19 Wend. 11; *Rosevelt* v. *Kelly*, 20 John. Rep. 210; *Stratton* v. *Bingham*, 2 Sneed, 420; Vattel, 93; *The Venus*, 8 Cranch. Rep. 253.

*J. D. Freeman* and *C. C. Shackleford*, on same side, filed elaborate briefs.

Peyton, J., delivered the opinion of the court.

On the 21st day of October, 1865, William M. Fowler sued out a writ of attachment against the estate of George A. Ross, on the ground that said Ross was a non-resident of this State. The said writ was levied on certain real estate of the said Ross, and was returnable to the March Term of the Circuit Court of Madison county, 1866.

Britton L. Prichard was summoned as garnishee, to appear at said term of the court, to answer on oath what he, as executor of the last will and testament of James S. Prichard, deceased, or in his individual capacity, was indebted to the defendant in the attachment, or what effects of the defendant he had in his hands, or what effects or debts of the defendant there were in the hands of any other person, to his knowledge or belief. And in obedience to the summons he appeared at the March Term of said court, and answered that he was not individually, or as executor of the will of James S. Prichard, deceased, indebted to the defendant in the attachment, nor had he individually or as such executor any effects of said defendant in his hands. This answer was controverted by the plaintiff in writing, who alleges that the same is untrue, and that at the time of the service of the writ the said garnishee was in point of fact indebted to the defendant in the attachment in a large sum of money, to wit, in the sum of thirty thousand dollars.

At the return term of the writ of attachment, the defendant appears and files the following plea: " The defendant, George

A. Ross, in his own proper person, comes, and for traverse and plea to the attachment in this case says on oath that he was not a non-resident of the State of Mississippi on the 21st day of October, 1865, the date of said attachment and the affidavit therefor." And then, under notice, he proceeds to give a history of the facts, causes, reasons, and motives that induced him to go to the State of Texas, and on which he relied in proof to support the plea; all which is verified by the oath of the defendant. This plea, it appears from the record, was demurred to by the plaintiff, and the demurrer sustained by the court, and leave given to the defendant to answer over; and the defendant then filed a special plea, setting forth very nearly the same facts stated in the notice appended to his first plea, together with others, and to this plea also a demurrer was sustained by the court; and the record states that the defendant, declining to plead further, makes default, and thereupon the court rendered judgment against the said defendant, in favor of the plaintiff, for the sum of $7,704.29, to be levied of the lands, rights, and credits attached in this case; and thereupon a jury came to try the issue joined between the plaintiff and the garnishee, and said jury found the said issue in favor of the plaintiff, that the said B. L. Prichard was at the time of the service of the garnishment indebted to the said George A. Ross in the sum of $7,704.-29; and thereupon the court rendered judgment against the said B. L. Prichard, in favor of plaintiff, for said sum of money. From these judgments the plaintiffs in error prosecute this writ of error.

It is much to be regretted that so little attention is given to the science of pleading, to the importance of which we have the attestation of the distinguished American jurist, Chancellor Kent, who says, " I entertain a decided opinion, that the established principles of pleading, which compose its science, are rational, concise, luminous, and admirably adapted to the investigation of truth, and ought consequently to be very carefully touched by the hand of innovation." A strict observance of these principles would tend much to diminish litigation, and greatly facilitate the administration of justice.

George A. Ross et al. v. William M. Fowler.

The efforts of the legislature of this State, for some time past, to simplify the laws, and to dispense with the knowledge of special pleading, cannot but be regarded as unfortunate for the legal profession, and more especially so for the parties litigant. Abating legal subtleties and useless technicalities, which were in ancient time a reproach to the law, we regard a knowledge of the rules of pleading as essential to the correct administration of justice in a country where the common law system of jurisprudence prevails.

In the case at bar the only plea authorized by the statute was a mere traverse or simple denial of the truth of the alleged cause for which the attachment was sued out. This plea in a few words presents the issue to be tried in all such cases. The second plea filed in this cause, so far as appears from the substituted plea, was clearly bad, and as special pleading it wants those requisites which are necessary to constitute it a good plea, and the plaintiff's demurrer was therefore properly sustained to it. This second plea appears, however, to have been the result of an error of the court in sustaining the plaintiff's demurrer to the first plea. This plea, independent of the matter contained in the notice appended to it, though inartificially drawn, is perhaps a sufficient traverse under the statute of the alleged cause for which the attachment was sued out. The oath applies as well to the plea as to the irrelevant matters set out under the notice; and although the mode of verifying the plea is not very satisfactory, yet, in view of the very loose practice that is known to prevail in the Circuit Courts in such cases, it may be regarded as substantially sufficient.

The alleged cause of the attachment was, that the defendant was a non-resident of this State; and the defendant, in his first plea in abatement, as appears by the record, denies that fact, and says that he was not a non-resident of this State at the date of the affidavit and the time of suing out the attachment, and upon this issue the cause should have proceeded to trial in the court below.

And inasmuch as a judgment cannot legally be rendered against the garnishee until a judgment is obtained against the

defendant in the attachment, the judgments will be reversed, the demurrer to the first plea overruled, and the cause remanded.